**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Shawn Lee Thompson, | No. CV-23-08577-PCT-SRB (ASB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Ryan Thornell, et al., | |
| Respondents. | |

TO THE HONORABLE SUSAN R. BOLTON, SENIOR UNITED STATES DISTRICT JUDGE:

Petitioner Shawn Lee Thompson ("Petitioner"), who is not in confinement, has filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition") pursuant to 28 U.S.C. § 2254. (Doc. 4).[1] Petitioner is represented by counsel in the instant habeas proceedings. For the reasons that follow, the Court recommends that the Amended Petition be denied and dismissed.

**PROCEDURAL HISTORY**

**I.    State Proceedings**

    **A.    Facts**

The Arizona Superior Court found the following facts and procedural history as true:[2]

---

[1] Citation to the record indicates documents as they are displayed in the District of Arizona's official Court electronic document filing system under Case No. CV-23-08577-PCT-SRB (ASB).

[2] The superior court's recitation of the facts is presumed correct. *See* 28 U.S.C. §

On July 5, 2011, Defendant plead[ed] guilty to one count of Luring a Minor for Sexual Exploitation and two counts of Aggravated Luring a Minor for Sexual Exploitation. The Court sentenced him to a 3.5-year prison term on the Luring a Minor for Sexual Exploitation charge followed by lifetime probation on the other two counts. Defendant was allowed to transfer his probation supervision from Yavapai to Mohave County upon his release from prison.

In October 2017, the Mohave County Adult Probation Department conducted a probation search of his residence and discovered what was believed to be contraband on his computer. The Probation Department filed a Petition to Revoke Probation on November 16, 2017 alleging multiple violations of Special Sex Offender conditions, including Sex Offender Condition #10. Specifically, the Petition alleged he was using his computer and other internet capable devices to 1) chat and send photos over the internet to an unidentified female, 2) view pornography, 3) solicit sexually illicit images, and 4) possess sexually illicit materials. The Public Defender's Office appointed Ms. Michelle DeWaelshe to represent Defendant.

At an admission proceeding on January 2, 2018, Defendant admitted to violating Sex Offender Condition #10 by "*viewing pornographic materials over the browser on the [PlayStation 4]*." Admission Transcript pg. 8, line 20-23, 01/02/18. However, he denied the other allegations relating to Condition #10. The Court found Defendant's admission to viewing pornography using his computer constituted a violation of Sex Offender Condition #10.

In Defendant's written statement included as part of his Pre-Sentence Information, he again acknowledged he was "*viewing porn and flirting with females on the PlayStation Network …*". In his written statement included as part of the Dispositional Report, Defendant further admitted that "*on or between July and October 2017, [he] accessed the PS4 web browser and watched pornographic materials of teen adult and animated females*."

2254(d)(2), (e)(1).

> The Court revoked Defendant's probation on January 22, 2018 and sentenced him to a five (5) year prison sentence on one count of Aggravated Luring a Minor for Sexual Exploitation followed by an additional term of lifetime probation on the remaining count.

(Doc. 10-2, Exh. S at 98-99) (italics and brackets in original.)

### B.     Post-Conviction Relief Proceedings

Petitioner first filed a notice of post-conviction relief ("PCR") in 2012, after he was convicted of the underlying charges in this case. (Doc. 10-1, Exh. E.) That notice was voluntarily dismissed. (Doc. 10-1, Exhs. G, H.) The relevant PCR proceedings began after Petitioner's probation violation disposition hearing on January 22, 2018. (Doc. 10-1, Exh. I.)

After he was sentenced on the probation violation, Petitioner filed his second PCR notice on April 17, 2018, raising a claim of ineffective assistance of counsel. (Doc. 10-1, Exh. J.) The notice was originally dismissed on December 12, 2018, but on January 16, 2019, the superior court reinstated Defendant's right to seek post-conviction relief due to an issue with PCR counsel. (Doc. 10-1, Exh. L.) On September 11, 2019, the superior court dismissed the PCR proceedings after finding that Petitioner failed to file a PCR petition before the court's deadline. (Doc. 10-1, Exh. O.) Petitioner did not appeal the dismissal.

On April 1, 2021, Petitioner filed a third PCR notice (Doc. 10-1, Exh. P) along with a PCR petition and "Opening Brief." (Doc. 10-1, Exh. Q; Doc. 10-2, Exh. R.) Petitioner presented six issues in the Opening Brief, citing Fourth Amendment violations related to the probation search, several instances of ineffective assistance of counsel, and a lack of evidence supporting the probation revocation. (*See* Doc. 10-2, Exh. R.) The superior court reviewed Petitioner's notice and extended explanation form to decide whether the notice was proper. (Doc. 10-2, Exh. S.) Petitioner stated that his notice was untimely because of changes to Arizona Rule of Criminal Procedure 33 in 2020. (Doc. 10-2, Exh. R.) He also stated that, in 2020-2021, electronic devices seized during the probation search were returned to him, and they contained evidence showing that he did

not violate the conditions of his probation.[3] (*Id.*) The court found that neither of these events adequately explained why the claims were not raised previously or in a timely manner. (Doc. 10-2, Exh. S.) Accordingly, in an order dated May 12, 2021, the superior court dismissed the notice without addressing the merits of the PCR petition. (*Id.*)

On June 7, 2021, Petitioner filed a document titled "Defendant's Response to Court's Considering Whether Notice is Proper," which the superior court treated as a Motion for Reconsideration. (Doc. 10-2, Exhs. T, U.) That court denied the motion on June 17, 2021, finding no basis for reconsideration. (Doc. 10-2, Exh. U.) On July 14, 2021, Petitioner filed a Motion for Correction of Sentence, which the court also treated as a fourth PCR petition. (Doc. 10-2, Exhs. V, W.) On July 27, 2021, the superior court denied the Motion for Correction of Sentence as untimely and dismissed the PCR petition because Petitioner did not explain why the claims were not raised previously or in a timely manner. (Doc. 10-2, Exh. W.)

On August 16, 2021, Petitioner filed a Petition for Review with the Arizona Court of Appeals. (Docs. 10-3, 10-4, 10-5, Exh. X.) On December 23, 2021, the Court of Appeals denied the petition for review, finding no abuse of discretion. (Doc. 10-6, Exh. AA.) Following the denial, Petitioner, through counsel, filed a Petition for Review with the Arizona Supreme Court on January 27, 2022. (Doc. 10-6, Exh. BB.) On review, Petitioner presented four issues:

> I. [Did] [t]he Superior Court err in finding Mr. Thompson's Rule 33.1 Petition untimely?
> II. Was Mr. Thompson prejudiced by an illegal sentence as it stemmed from an erroneous probation violation?
> III. [Were] Mr. Thompson's rights violated when he was arrested for a probation violation without proper notice?
> IV. Did Mr. Thompson suffer ineffective assistance of counsel for counsel's failure to address Mr. Thompson's hospitalization at his revocation hearing?

---

[3] Petitioner initiated proceedings to facilitate the return of the seized property. This Court will not address the procedural history of those proceedings because they do not impact the analysis of Petitioner's claims.

- 4 -

(Doc. 10-6, Exh. BB.) On October 7, 2022, the Supreme Court denied the petition for review. (Doc. 10-6, Exh. CC.)

**II.   Federal Proceedings**

On October 11, 2023, Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) On February 15, 2024, Petitioner filed the instant Amended Petition. (Doc. 4.) In his Amended Petition, Petitioner asserts two grounds for relief, both centered on the probation violation proceedings:

> GROUND ONE: Petitioner's conviction violates his federal constitutional right to due process where he has been subject to an unreasonable search and seizure. U.S. Const. amend. IV.
>
> GROUND TWO: Petitioner's conviction violates his federal constitutional right to due process where he has been subject to ineffective assistance of counsel. U.S. Const. amend. XI.

(Doc. 4 at 6, 10.)

Respondents argue that Petitioner does not meet the "in custody" requirement of 28 U.S.C § 2254 because his challenges are based on the probation violation proceedings, rather than the underlying conviction for which his lifetime probation was originally imposed. (Doc. 10 at 4-5.) Respondents also assert that the Amended Petition is untimely and that both claims are procedurally defaulted. (*Id.* at 5-15.) Petitioner filed a Reply arguing that he is in custody within the meaning of the statute, his Amended Petition is subject to equitable tolling, and his claims are not procedurally defaulted. (Doc. 11.)

**ANALYSIS**

**I.   Jurisdiction**

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). The law requires "that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed," even if the petitioner is not physically confined. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (citations omitted). Additionally, "a person is in custody pursuant to a judgment of a State court . . . when the prisoner's custody is attributable, at least in part,

to such a judgment." *Dominguez v. Kernan*, 906 F.3d 1127, 1136 (9th Cir. 2018) (quoting *White v. Lambert*, 370 F.3d 1002, 1007-08 (9th Cir. 2004)) (internal quotations omitted). Petitioner is on probation, which generally satisfies the "in custody" requirement. *Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005) (citations omitted). Because Petitioner's lifetime probation was reinstated at the time of his probation violation, and Respondents did not cite authority to the contrary, the Court will assume the "in custody" requirement is met.

**II.     Timeliness**

Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244. The AEDPA imposes a one-year limitation period on state prisoners filing habeas corpus petitions in federal court. 28 U.S.C. § 2244(d)(1). The limitation period generally runs from the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

On January 22, 2018, the trial court sentenced Petitioner on the probation violation. Petitioner then initiated his of-right review on April 17, 2018, when he filed a PCR notice. The review concluded on September 11, 2019 when the superior court dismissed the notice. Thus, Petitioner's convictions became final for the purposes of

1    AEDPA on October 11, 2019, upon the expiration of his time for seeking review. *See*
2    Ariz. R. Crim. P. 32.9(c) (abrogated 2020) ("No later than 30 days after the entry of the
3    trial court's final decision on a petition or a motion for rehearing, an aggrieved party may
4    petition the appropriate appellate court for review of the decision."). The AEDPA's
5    statute of limitations therefore began running on October 12, 2019,[4] and expired one year
6    later, on October 12, 2020. Petitioner filed his original habeas petition on October 11,
7    2023, nearly three years after the one-year limitation period had expired. (*See* Doc. 1.)

8        Regarding the timeliness of the Petition, Petitioner argues that the statute of
9    limitations only began on October 7, 2022 when the Arizona Supreme Court denied
10   review. (Doc. 4 at 15.) However, the AEDPA's one-year limitation period is tolled only
11   for the time "during which a properly filed application for State post-conviction or other
12   collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §
13   2244(d)(2). Moreover, "filing a new petition for post-conviction relief does not hit a reset
14   button on a statute of limitations that has already run before the new petition was filed."
15   *Blackwater v. Ryan*, No. CV-14-01533-PHX-JAT, 2015 WL 4464566, at *2 (D. Ariz.
16   July 21, 2015) (citing *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003)).
17   Petitioner does not explain why the one-year period did not begin after the dismissal of
18   the second PCR proceeding in 2019, as outlined above.

19       Instead, Petitioner argues that "it was not until property was released to him in
20   June of 2022[5] [that] he discover[ed] the basis for his claims presented in this matter."
21   (Doc. 11 at 2.)  There are several dates in the record referring to the return of Petitioner's
22   property from the probation department. The superior court wrote in its order dismissing
23   the third PCR petition that Petitioner received the seized property in June 2020. (Doc 10-
24   2, Exh S at 100.) In the extended information form accompanying his April 1, 2021 PCR

---

[4] For purposes of counting time for a federal statute of limitations, the standards in Federal Rule of Civil Procedure 6(a) apply. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Thus, the one-year statute of limitations began running the day after Petitioner's convictions became final for purposes of the AEDPA. *See* Fed. R. Civ. P. 6(a)(1)(A) ("[E]xclude the day of the event that triggers the period").
[5] There is nothing in the record indicating that Petitioner received property in 2022, so the Court believes this date to be a typographical error.

- 7 -

petition, Petitioner wrote that the seized property "beg[a]n to become access[i]ble" through conversations in June 2020. (Doc. 10-2, Exh. R at 4.) But Petitioner also wrote that he received property on September 10, 2020 and received a flash drive on February 3, 2021. (*Id.*) In the third PCR petition, Petitioner attached court orders indicating the property-related proceedings were ongoing through at least October 21, 2020. (*Id.* at 37.) However, Petitioner does not specify which of these dates are relevant to his claims. (*See* Docs. 4, 11.)

To the extent that Petitioner is arguing his Petition is not barred under 28 U.S.C. § 2244(d)(1)(D) because he only obtained the seized property in 2020-2021, the argument is unavailing. Subsection D provides that the one-year statute of limitations begins to run when the "factual predicate" of the habeas claims could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(D). However, Petitioner's claims of unreasonable search and seizure and ineffective assistance of counsel are not predicated on facts related to the returned property. The only time Petitioner references the returned property in his Amended Petition is when he states that the lack of evidence found on his computer after its return from the probation department proves the search was unreasonable.[6] (*See* Doc. 4 at 6-13.) Moreover, Petitioner does not explain why he could not have discovered these facts earlier, given that he had knowledge of his own use of his property. *See id.*; *see also United States v. Harrington*, 410 F.3d 598, 600-01 (9th Cir. 2005) (holding that photographs of the crime scene, a street map, and transcripts of prior proceedings could have been identified with due diligence and were not newly discovered).

Assuming for the sake of argument Petitioner could have only discovered his claims on the date the seized property was returned, his Petition is still untimely.[7] Petitioner does not provide the exact date that he received his property. But even if the

---

[6] The Amended Petition states, "[l]ike the defendant in *Lara* . . . Mr. Thompson merely missing a meeting is not enough to justify a warrantless search of his technological devices, especially when the State itself returned the devices to Mr. Thompson, indicating that no criminal activity had actually been discovered on the device." (Doc. 4 at 9) (citing *United States v. Lara*, 815 F.3d 605 (2016)).
[7] Whether the Amended Petition is timely relative to when Petitioner's property was returned is inconsequential because, as discussed *infra* Section V, the evidence found is not relevant to Petitioner's probation violation proceedings or the instant claims.

- 8 -

statute of limitations only began on February 3, 2021, the latest date appearing in the record that any property may have been returned, Petitioner still did not file his habeas petition until October 11, 2023. After February 3, 2021, the one-year limitations period only would have tolled while Petitioner's second PCR notice was pending, from April 1, 2021 until May 13, 2021. Petitioner's subsequent filings were not considered to be properly filed, as they were deemed untimely. Therefore, Petitioner would not have been entitled to more statutory tolling. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). The Petition is untimely unless equitable or statutory tolling applies.

### III. Equitable Tolling

The one-year limitation period may be subject to equitable tolling in "appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010); *see Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating "the threshold necessary to trigger equitable tolling [under AEDPA] is very high"). A petitioner is entitled to equitable tolling only if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotations and citations omitted). Petitioner bears the burden of establishing that equitable tolling is warranted. *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Regarding the first prong, a petitioner must demonstrate that "he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020). The second prong is met "only when an extraordinary circumstance prevented a

petitioner acting with reasonable diligence from making a timely filing[.]" *Id*. at 600. In evaluating whether an "extraordinary circumstance" exists, the Court "must decide the issue based on all the circumstances of the case before it." *Smith*, 953 F.3d at 600 (internal quotations and citations omitted). "The grounds for equitable tolling are highly fact-dependent." *Grant v. Swarthout*, 862 F.3d 914, 918 (9th Cir. 2017) (quoting *Sossa v. Diaz*, 729 F.3d 1225, 1237 (9th Cir. 2013)).

Here, equitable tolling is not appropriate. Petitioner argues that he was prevented from filing a timely PCR petition because the property seized during the probation search was not returned to him. (Doc. 11 at 4-5.) However, Petitioner has not shown how the fact that he could not inspect the seized property until it was released caused the untimeliness of his habeas filing. *See Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003) (holding a prisoner must show that the "extraordinary circumstances" were the cause of his untimeliness).

The record also shows that Petitioner was not diligent in pursuing his claims before, during, and after any extraordinary circumstance existed. Petitioner originally filed a timely PCR notice on April 17, 2018, but the notice was eventually dismissed because Petitioner failed to file a PCR petition before the deadline. (Doc. 10-1, Exh. O.) Further, Petitioner does not explain when he received the property that, according to him, contained evidence relating to his claims. After the superior court denied the third PCR notice, Petitioner filed two more motions with the superior court. (Doc. 10-2, Exhs. T, V.) But Petitioner did not appeal to the Arizona Court of Appeals until after his fourth PCR notice was denied. (Docs. 10-3, 10-4, 10-5, Exh. X.) Although Petitioner made various efforts to pursue claims in the state courts between April 2021 and January 2022, he does not adequately explain the original delay or why his filing was untimely even after the probation department returned his property. Because Petitioner has not shown that he has been pursuing his rights diligently or that an extraordinary circumstance caused the untimeliness, the one-year AEDPA limitation period is not subject to equitable tolling.

### IV. Statutory Tolling

The AEDPA also provides for statutory tolling during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). As discussed, *supra*, on April 17, 2018, Petitioner filed a PCR notice, which tolled the statute of limitations until the superior court dismissed the notice and the period to seek review expired on October 11, 2019. The statute of limitations then ran for one year until October 12, 2020. Because Petitioner's subsequent PCR notices and other filings were deemed untimely by the superior court, statutory tolling does not apply. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (holding "[b]ecause the state court rejected petitioner's [PCR] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."). Petitioner did not file his original habeas petition until October 11, 2023. (*See* Doc. 1.) Therefore, Petitioner was more than one year late in filing his habeas petition, despite the statutory tolling.

### V. Actual Innocence

A time-barred federal habeas petition may also be considered by this Court if a petitioner can make a showing of "actual innocence." *See McQuiggin v. Perkins*, 569 U.S. 383, 391-96 (2013) (holding that the "actual innocence gateway" extends to petitions that are time-barred under the AEDPA); *see also Schlup v. Delo*, 513 U.S. 298 (1995) (applying an "actual innocence gateway" to federal habeas procedural bars); *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) ("[A] claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits."). Under *Schlup*, a petitioner seeking federal habeas review under the actual innocence gateway must establish his factual innocence and "not mere legal insufficiency." *See Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513

U.S. at 327). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324.

Petitioner claims that evidence found on the returned property shows that no reasonable juror would have convicted him of the probation violation. (Doc. 11 at 7.) The superior court addressed this argument when it dismissed Petitioner's second PCR notice. (Doc. 10, Exh. S.) The petition to revoke Petitioner's probation alleged that Petitioner used "his computer and other devices to 1) chat and send photos over the internet to an unidentified female, 2) view pornography, 3) solicit sexually illicit images, and 4) possess sexually illicit images." (*Id.*) At an admission proceeding, Petitioner "admitted to violating Sex Offender Condition #10 by '*viewing pornographic materials over the browser on the [PlayStation4]*,'" but he denied the other allegations relating to Condition 10. (*Id.* (quoting Admission Transcript) (italics and brackets in original)) In a written statement included in the dispositional report, Petitioner admitted that he "*accessed the PS4 web browser and watched pornographic materials of teen adult and animated females.*" (*Id.* (italics and brackets in original)) Based on this admission, the court revoked Petitioner's probation. (*Id.*)

In his Reply, Petitioner states that evidence found on the returned devices shows that he did not, in fact, violate the conditions of his probation:

> [W]hen Mr. Thompson's property (electronic devices) were released to him, he was able to view the alleged violations of his probation consisting of communications to a woman that ended up being an email to the wife of his business partner for business purposes. This communication did not violate his internet directive as alleged by APD, who made it appear as if Mr. Thompson was sending inappropriate messages and photographs to an 'unidentified female.' Looking at the messages themselves, no criminal activity or sexual activity occurred and was within the realm of APD's internet allowances.

(Doc. 11 at 7.) As the superior court stated, the evidence described has no bearing on whether Petitioner is innocent of using the devices to view pornography, the admission which constituted the probation violation. (*See* Doc. 10, Exh. S. ("It was his viewing of pornography and his admission to that which formed the basis of the probation violation. Whether the computer equipment returned to him in 2020 contained any contraband is not relevant and does not justify the untimely filing of the Notice.")) Petitioner has not provided the Court with new evidence that more likely than not would have prevented a jury from convicting him of the probation violation. Accordingly, Petitioner cannot pass through the actual innocence gateway to excuse the untimeliness of his habeas petition.

## CONCLUSION

The Court concludes Petitioner's habeas Petition was untimely filed, and neither equitable tolling, statutory tolling, nor the actual innocence gateway apply to render the filing of the Petition as timely. The record is sufficiently developed, and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Accordingly,

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114,

1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 2nd day of October, 2024.

Honorable Alison S. Bachus
United States Magistrate Judge

- 14 -